Jr., arguing for the appellant John R. Zemater Jr., arguing for the appellee Katrina Kuhn. Good morning. Again, this is Justice Burkett. We want to thank you for agreeing to conduct the oral argument this morning remotely. Before we begin, let me make a few comments about our format today. Just as if we were in the courthouse, you'll be given your regular allotted time of 15 minutes. When you're not arguing, as our clerk Jeff Kaplan said, please mute your phone. Each party will have 15 minutes for your main argument. The appellant will have 5 minutes for a rebuttal argument. As you heard, the clerk will signal a timer at 10 minutes. That 10-minute mark is to allow us time for questions. So you'll have 5 minutes remaining in your argument when that signal is given. Of course, you do not have to use all of your time. You can invite questions at any time. The purpose of the 5-minute signal is for us to make sure that we have time for questions from the panel. As is our practice in the Second District, we've all read the briefs. We're familiar with the facts of the case. What will be different today is that we will not be interrupting your arguments with questions as we usually do. Conducting oral arguments remotely makes that awkward to proceed in that manner. We'll save our questions until you complete your argument. Keep in mind you're not required to use all of your time. Certainly if you complete your argument before the signal, we can ask our questions at that point in time. Remind you that no one except the clerk of the court is permitted to record the argument. Do either of the parties have any questions regarding our format today? Appellant, do you have any questions? No, I don't. Well, I'd like to make a note, this is my very first time doing an oral argument period, but as of now, I don't have any questions. You'll be treated in the same fashion as any other, as an attorney. So even though you're proceeding pro se, you've briefed the case, you're familiar with the record, correct? Yes, I am. You may proceed then, Mr. Zimander. Okay, I'm going to start out with the judge, in this case, the trial judge. I have my brief in front of me. The trial judge made a mistake by not vacating the ex parte judgment of conviction in the first place. In my brief, I cited in the re-healing D, and that involved a case where somebody's parental rights were terminated. In that case, the person had children to take care of, and the person also had a flat tire, and that prevented him from going to court. And the facts of my case, I ran late to court on a court date, on my jury trial date, and that was because I had car trouble. And I documented that car trouble, I brought in receipts, and nobody disputed the fact that I had car trouble. And so the fact that in re-healing D, the guy had a flat tire, and I had car trouble, you know, that should support that the ex parte judgment should have been vacated on those grounds. And there was a discussion about my previous two ex parte judgments of conviction that were entered against me, because the one that was entered in July of 17 was my third one. I do acknowledge that I missed two trial court dates, and that was because I was sick and I had a doctor's note. And I believe I noted that in my brief, too, that if I had somebody that I could send to court, or if I had an attorney, the attorney would have told the judge and the prosecutor that I was sick and that I needed a continuance. And I know under Illinois law, even for petty offenses, if somebody is sick, you're entitled to a continuance. And so if it hadn't been for the fact that it was pro se and that I had nobody to send to court, you know, those two ex partes would not have been entered. And I believe the second one, and I'm trying to refresh my memory here, but I believe in January of 17, I believe, there's actually in the record a doctor's note saying that I was on bed rest during that time. So one of the ex partes, I have a documented illness that, yes, I was sick. And there was talk about people versus color. And like I noted in my brief, the facts in my case are actually different from that case. In that case, the defendant actually set himself up where he had multiple court dates that he missed, and those multiple court dates being missed could have been avoided. You know, because even though he had an attorney, nobody brought to the court's attention that he was out of state going to college. And if his attorney or even the defendant himself in that case would have told the court, you know what, I'm in Florida and going to college, and a October court date would not work out or a December court date would not work out, can you set up a court date with this particular date so that I could go to court and fit it into my college schedule? You know, then his missing those court dates would have been avoided. See, in my case, I missed court dates not because of stuff within my control. It was because I was sick. And in people versus color, he didn't do anything to tell the prosecutor and the judge, you know, that he was going to college at that time. So that's my second point, that my case is actually legally distinguishable from people versus color when it comes to attendance of court dates. And then I'd also like to talk about my 1401 petition now, because when I was arguing my 1301, the judge and the prosecutor reviewed, or excuse me, the prosecutor brought up people versus color. And when I looked at people versus color, I actually realized that it should have been vacated based on the fact that the judge wasn't authorized to enter the judgment in the first place. When I was sick the first time around, I was in King County Branch Court. And in King County Branch Court, there are no court reporters there. And I attempted to get a bystanders report certified. And Judge Downs denied my motion to get that certified on the basis he didn't remember anything. And I did take the issue up with the Illinois Supreme Court. And obviously, the Illinois Supreme Court agreed with Judge Downs, you know, because he couldn't remember anything. The bystanders report could not be certified. But when I was sick the first time around, I did bring up the fact that, you know, the judge wasn't authorized to enter the ex parte judgment of conviction in the first place because I didn't sign the citation. And because I didn't sign the citation, the judgment should not have been entered. And she rejected that argument, but she accepted the argument that I was sick. And because I was sick, the judgment should be vacated. And after my third ex parte in July of 17, when we were litigating this issue, the state brought up People v. Kohler. And I was looking up that case after they sold it to me and after I looked at it. And then after I looked up, you know, City of Naperville, I came to the realization that Judge Downs made a legal mistake when she denied my argument that she wasn't authorized to enter it in the first place. And the reason why I didn't raise that argument in my second 1301 and my third 1301 is because I thought they were authorized to enter it. And so I decided just to litigate the 1301 motion a little bit longer. And then after I was done with that, then I filed my 1401 on the basis that the judge wasn't authorized to enter it in the first place. And the state at the trial court level and the state at the appellate court level has never argued that I wasn't diligent in doing the 1401. Because I know you have to show that you're diligent in filing the 1401 and the state, as far as I can see, hasn't disputed that fact. And now I would like to make the argument that the judge mentioned I've been entered in the first place because the judge wasn't, you know, authorized to enter it. Illinois Supreme Court Rule 556, I believe, has four different procedures. I know that rule has been amended since then, but it has procedures when somebody is on a CAS bond. They post a CAS bond. There are procedures when they have an IA bond and so on. I want to make the most use of my time here. But all these Supreme Court rules that authorize the entry of an ex parte judgment of conviction upon a defendant's failure to appeal, they don't apply to my case. And the state never disputed that I didn't sign the citation. It's in the record that I never signed a promise to comply. And because of that, I feel that the judge had no business entering it in the first place. And, you know, in the city of Naperville case, I believe he was released on a notice to appear. And no, he wasn't. I'm sorry. I haven't reviewed the facts, but I believe in that case, you know, don't hold me to it. You have to review the case. But in the city of Naperville case, I believe he was released on a notice to appear. And because he was released on a notice to appear, no judgment was authorized to be entered. And this honorable court ruled that since it wasn't authorized, that the only option the judge had at that point is to issue an arrest warrant and then take the person in on an arrest warrant. So, obviously, the facts in my case are the exact same as the city of Naperville versus Lawrence case and the People v. Kohler case. And even in the People v. Kohler case, it said that, you know, the defendant signed the citation consenting to the judgment if he failed to appear or otherwise comply. With the terms of the citation. And so, obviously, the facts in my case are the same as that. And I know the state, you know, brought up in its brief Illinois Supreme Court Rule 556. And they made the argument that even though those subsections don't apply to me, the judgment still could have been entered pursuant to 556. Well, the reason why I didn't file a reply brief is because I want to do a little bit more research into it. And I did do a little bit more research into 556. And I believe even as everything's written, you know, Illinois Supreme Court Rule 556 still doesn't authorize the entry of the judgment. You know, just because I didn't sign the citation, I wasn't released on a cast bond, I wasn't released on a notice to appear, and so on. So, I'm just going to wrap up my argument in the next couple minutes and I'll just open this up for questions. You know, my main point here is that those two prior expiry judgment convictions, these would be considered excused absences just because I was sick during those two court dates and it wasn't my fault. I missed it. And like I pointed out, under Illinois law, if I had an attorney or if I had somebody who could go to court on my behalf, continuances would have been entered anyway under Illinois law. And after the judgment was entered, it should have been vacated anyway because the judgment against an Illinois Supreme Court case in Rehaley D. And that, you know, in that case, the guy had car trouble. And because the guy had car trouble, he couldn't make it to court, and the Supreme Court found that was a valid reason to vacate the default judgment when it came to his parental rights. And when it comes to my argument that it wasn't authorized to enter, you know, clearly under Illinois Supreme Court rules, you know, it wasn't authorized to enter the judgment. You know, I never signed the citation, and the state doesn't dispute that, and the state doesn't dispute, at least so far, that, you know, I was diligent in filing the 1401. They never disputed that at the trial court. They never disputed it up here. And clearly, under 556 and its subsections, the judge wasn't authorized to enter that party judgment of conviction in the first place. And at this point in time, I'd like to turn it over to the justices for questions, if they have any for me. Okay. Thank you, Mr. Rivlin. I'll wait about just a second. Am I unmuted? Yes. Okay. My phone is giving me a hard time. All right. Thank you very much, Justice Burkett. Mr. Zmader, on the day that you missed the last court date, the one that we're really here to talk about, had you made a phone call to the court or to the clerk before the morning call had passed? Yes, I did make a phone call. I don't know if it's in the record or not. I believe it is. But I did make a phone call to the clerk's office, the King County Court, and I believe either—I want to be 100% honest. I don't remember if it just didn't go through to them and nobody picked up, or I talked to them and they said they couldn't get the message across. But I did make a good faith attempt to get the message, hey, I was running late because of my car trouble, and I was on my way. So I did make—I did call the clerk's office to tell them the situation. I don't remember if I was just placed on hold and the call didn't go through, or if I called them and they told me there was nothing that they could do. I don't remember exactly. You know, this happened almost three years ago. I don't want to lie, but yes, I did make a good faith effort to get the message across that I was a running late. Now, at any time when you appeared in court, were you ever given a notice about trial in absentia? Yes, I believe one time I was given a notice that a trial could go forward without me being there. All right. And why then is that not sufficient notice for you to come to be present on that dating question that we're talking about? You were given notice that this case could go ahead without your presence. Well, I do have some legal experience. I know usually for misdemeanors and for felonies, you know, when somebody's given that notice that a trial could go forward without somebody being there, usually that means that the defendant isn't there, and then the state calls its witnesses, and there's actually a trial on the facts of the case, and there's no ex parte judgment of conviction. You know, because obviously with cutting offenses, an ex parte judgment of conviction can be entered, but in my mind, that's different from a situation where you're charged with a misdemeanor or a felony, a date is set for trial, and then you don't show up, or the defendant doesn't show up. And obviously in those cases, when the defendant doesn't show up to trial, the trial would be conducted where there'd be witnesses and so on, and the state would still have to prove its case. So in my mind, that's what a trial in abseia would mean. Okay, but an ex parte conviction means that somebody isn't there, and the court could have heard evidence, doesn't it? From my understanding, an ex parte judgment of conviction is a default judgment, the same as if you're in civil court, and you miss a court date, or you miss a trial date, and a default judgment is entered. So in my mind, an ex parte judgment of conviction in a petty offense is the same exact as a default judgment in a civil case. Right. Now, you did not sign the citation, as you've said several times. Was that because it wasn't presented to you for signature, or you declined to sign the citation? Well, what happened was, at the scene of the accident, I gave my driver's license and my insurance card to the police officer, and then the police officer gave me my insurance card, my driver's license, and the citation to me. And when he gave the citation to me, along with my driver's license and my insurance card, he didn't require me to sign the citation. He just gave me the citation without requiring me to sign it. So he just gave you your copy of the citation, is what you're saying, correct? Yes, that's correct. And my last question would be, because you did fail to appear at the designated time, and if you believe that an ex parte judgment could not be entered, would a warrant for your arrest be appropriate in the alternative? Yes. I believe, under the facts of this case, the only thing the judge could have done is issue a warrant for my arrest. All right. Justice Burkett, I have no additional questions. Thank you. Justice Shostak. Justice Shostak, your questions? Yes, I'm sorry. I had to get off mute. The question that I have for you, sir, is that I think Justice Hutchinson asked it, but kind of in a different way. You're talking about Section 556B when you were given the citation wherein it said you did not need to appear, but you subsequently came into court and asked for a jury trial, correct? Well, what happened was I... At some point, you came into court and you requested a jury trial, correct? Not right away, but when I found out... At some point during this case, you came into court and you requested a jury trial, correct? That's correct. And at that time, the judge advised you that if you did not appear, a trial could be held in your absence, isn't that correct? That's correct. So at that point, doesn't that take you out of 556 and you're now in a different section because you were advised in absentia that if you did not appear, you were admonished that a trial could be held in your absence? Well, like I said in my reply to the Justice's question, when somebody starts with a misdemeanor or a felony and they don't appear in court for a trial, in that situation, a trial would be conducted and the state would still have to prove its case. Correct. And in this case, an ex parte judgment of conviction is pretty much equivalent to a default judgment. And a civil case. And obviously, in my case, no trial was held. Obviously, I ran late and the judge released the witnesses and he entered the ex parte judgment of conviction without any trial and without any questioning of the witnesses and so on. So in my mind, like I said before to the other judge, a trial in absentia means an actual trial and not a default judgment. Now, so how many times was it that you failed to appear when the judge had jurors waiting for you? This was the first time. Well, the first time I didn't appear, it was a bench trial. And the second time I didn't appear, it was a status state. So this was the very first time I did not appear when there was a jury trial with a jury waiting for me. So this is the first time. You have indicated that the judge has to accept your excuse of being sick. Whether or not we vacate the trial court's ruling is based upon a clear abuse of discretion. Isn't it the judge's determination as to whether or not he feels you were truthful in the excuses that you gave? And why should we second-guess or review the trial court for anything less than a clear abuse of discretion? Yeah, I know with an abuse of discretion, you're supposed to give defense to the trial court. I agree with you on that. When I was sick the first two times, I had a doctor's note saying I was sick. So obviously I was being honest. And when the second judgment was vacated, I believe the doctor's note was put into the record. And when I made my argument... The judge doesn't have to accept the doctor's note as being true, does he? Well, I believe in 99% of cases, the judge would have to accept it as true. And if he did have any doubts in his mind for whatever reason, he could call the doctor's office and talk to the doctor, you know, herself or himself. When you were in court, how many people did you see in the courtroom besides yourself? When I was at the branch court, there were several people there. Like, I remember waiting like a half an hour or an hour because, you know, traffic court is assembly line justice, kind of like how small claims court is. I'm sure you're familiar with that. I'm familiar with what traffic court is. My point to you, Mr. Zemeter, is that how is it that you feel the court system has the luxury of waiting around for people and constantly setting their cases over when every time they're supposed to go to court, they claim that they're sick? I mean, you were trying to get, in this trial court, judges trying to get justice moving, and every time your court case blew up, you were sick. And now you're relying on 556 to say, well, nobody can do anything to me because of 556, and I wasn't required to appear. When you put yourself in the position of asking for a jury trial, you were required to appear, weren't you? Yes, I was. And again, how do you distinguish the Kohler case from your case? Well, pretty much in the Kohler case, the defendant knew that he wasn't going to be able to be in court because of his college studies. I believe in that case, he was out of state in Florida going to college, and I believe a court date was set in October and that a court date was set in December. And so in that situation, he knew that court dates were being set where it was impossible for him to attend. And in that case, the defendant himself or the defendant through his attorney could have told the court, you know what, I'm going to be in college, out of state from August until December. Can you set up a court date sometime in December or January? And that would be the best for me, you know, for my schedule. And if he would have done that, all those missed court dates would not have happened. So it was within his control, you know, to avoid... And it wasn't within your control? Are you saying it was not within your control? Yeah, me missing court in February of 16 and me missing court in January of 17 was beyond my control because I was sick. And that's a trial court to make that determination, correct? Yes, the trial court made that determination and two different judges agreed with me because I was sick and exported judgment to be vacated. One other thing, you had indicated that if you had a lawyer, there wouldn't be a problem because you would just get the continuance. Again, that is up to the trial court to even determine whether they give a trial or a lawyer a continuance. It's not automatic, is it? Well, I know under Illinois law, the physical incapacity of a defendant is grounds for continuance in traffic cases and in criminal cases. So if somebody has a felony and they're in the ICU for whatever reason, and then they have documentation that they're in the ICU, you know, on the court date, the lawyer can bring it to the judge and to the prosecutor's attention, you know, that the person is in the ICU and a continuance should be granted. And there's actually a case law out there. I believe it was a speedy trial case where somebody was in the hospital for health reasons and they presented- Well, that's different. Speedy trials get totally different. We're talking apples and oranges here. Let me ask you one other question. How is it that you equate your situation to that of someone who is losing their parental rights? Well, pretty much, well, I know the state made the same argument, too, that the parental rights situation is kind of different. Well, I know it's just a petty offense and it doesn't affect my criminal record, but it does affect my driving record. And I believe this situation is the same situation as parental rights because with, you know, driver records, even though it's only a 10-point violation, it affects my driving privileges and it could, you know, potentially affect my insurance rates. And when I go to apply for a job, some jobs require a DMV check and they see I have an accident on there, you know, they might think, you know, negatively on me. So that's very important to you, isn't it? It's very important that you, yeah. Yeah, it's very important to me. But it wasn't important enough for you to drag yourself to court. You know, look, I made my argument, look, I made every single effort to make it there on July 17th, okay? I tried to make it there. I had trouble with my car. And, you know, even the prosecutor made a suggestion, maybe I should have called Uber or something like that. And, you know, I have a cell phone that doesn't, you know, work with Uber because I can't do apps, same thing with Lyfts. And with Lyft and Uber, you have to sign up for that service. And I even called around to different cab companies afterwards. And the soonest I could get the cab, assuming I spent the money, you know, I would have gotten there at the same exact time that, you know, I would have gotten there myself. And the morning of, you know, I did a no-test. I don't have any further questions, Justice, for Kepp. All right. Very briefly, Mr. Zeman, thank you. As Justice Hutchinson and Justice Zink have noted, there were multiple appearances by you in court during these proceedings, correct? That's correct. You filed a motion to disqualify the state's attorney, a motion for substitution of judge, correct? That's correct. You filed a motion to suppress where you laid out the facts of the accident, correct? That's correct. And those motions were all litigated. You showed up for those hearings, correct? That's correct. And your motion to suppress was denied, correct? I believe so, yes. But you've heard the term judicial admission, correct? Do you know what a judicial admission is? No, I don't. Well, a judicial admission is a statement by a party or by a party's lawyer as to the facts of a case that can be used against him or her at any time. And in your motion to suppress, you laid out the facts of the accident, correct? I believe so. I have to refresh my memory, but I believe so. And as the justices pointed out in their questioning, you mailed in your notice that you wanted a bench trial, correct? Yes. And why is that not, in all of the proceedings that took place, substantively the same as a notice to appear given by a police officer where you're told you have to be in court? How is that substantively any different? You're putting form over substance, aren't you? Well, I'm just going to – I know you're a former state's attorney, and I know who you are. But I'd like to refer back to my 556 argument. Obviously, if I was issued a notice to appear and I signed it, obviously the judge would have been authorized to enter it as part of your judgment of conviction. But in this case, I wasn't issued a notice to appear, and I didn't say anything. So I'm going to refer back to my 556 argument when it comes to that question. Well, let me just ask you this. Are you familiar with the procedural – you're obviously familiar with procedural rules. But are you familiar with the notion that when we're interpreting the rules, we have to take into consideration the purpose of the rules? The purpose of the rules is to avoid multiple appearances in cases like this, simple traffic cases, to accommodate the public, to reduce the overcrowding in the courtrooms, and to not allow for cases where litigation goes on for years. And in this case, the litigation is now going on its fourth year, right? Yeah, I completely agree with you on that. And, you know, I've been to traffic court in Cook County, and I know 504 and 505 and simple offenses like this. Yeah, the Supreme Court wants everything done in a court date because it's a simple case. So, yeah, I completely agree with that. In my question to you with respect to the court's question, when you have a judicial admission in a meeting by a party, what would be the purpose of a trial where you admit that you were unable to keep your car under control and you slammed into the other party's vehicle? All right, I kind of... What would be the abuse of discretion where the judge is looking at the record? What's the point of a trial? Well, I know. All right, all right. Yeah, I know what you're trying. Yeah, I know your background, and I know what you're trying to do here. Like, I know there's something called a simulated bench trial and stuff like that. Well, I guess you can have your opinion. I can have my opinion. But I believe under the facts of this case... Don't interrupt, please. I'm asking you a simple question. And do not refer to my background. Just answer the question. Where is the abuse of discretion? That's the question. Justice Shostak asked you the same question. Where is the abuse of discretion? Well, I still believe, even if I made a motion to suppress and I admitted the facts of the case, that even under those circumstances, there still would have to be a trial. All right. That's all I have. Thank you, Mr. DeMetter. Okay. The appellant, the appellee. Good morning, Your Honors. Good morning. You may proceed. Good morning, Mr. DeMetter. Good morning. May it please the Court. My argument will cover three main topics. The first topic I will discuss is the trial court's ability to enter a judgment against defendant. Second, the trial court's discretion to deny defendant's motion to vacate the July 10, 2017 trial. And third, why this court should affirm the trial court's rulings. First, defendant was issued a traffic citation for which he was not required to appear in court. The citation issued to defendant expressly informed him that an ex parte judgment could be entered against him and that if he did not appear in court when required, he consented to the entry of a judgment. Defendant's consent to the judgment is established by Illinois Supreme Court Rule 556A3, as set out on page 8 of my brief, and also by People v. Kohler, discussed on page 9 of my brief. Defendant elected a bench trial. He was not required to post bond or sign the citation as provided by Section 6-308 of the Illinois Vehicle Code, as discussed on pages 8 and 9 of my brief. The trial court thus had the ability to enter a judgment against the defendant. Second, as to the judgment that was entered by the trial court, the judgment that was entered by Judge Halleck on July 10, 2017, represented the third ex parte judgment entered against this defendant for a December 2015 traffic violation. The people argued that Judge Halleck exercised his considerable discretion to enter that judgment when defendant, again, failed to arrive in court on the day his case was scheduled for disposition. After defendant made it to court later that day and on the same day also managed to file a motion to vacate that judgment, the trial court was again within its discretion to deny the motion to vacate after hearing argument. When defendant then sought reconsideration of that ruling, the trial court, again, was well within its discretion to deny defendant's request after hearing further argument. In denying defendant's request for reconsideration, the court noted defendant's prior absences on the days on which the two previous judgments were entered. Defendant's pattern of failing to appear continued for some 18 months, or approximately 560 days after his traffic citation was issued in 2015. Despite defendant's representations to the contrary, the record strongly suggests either that defendant has very bad luck or the people maintain that the record establishes outright that defendant avoided appearing in court on the days the court was scheduled to decide the merits of his case. A closer look at defendant's own filings establishes that his excuse for failing to appear on the July 2017 trial date due to car trouble was simply unworthy of belief. Defendant stated in a 2016 filing, and that is at page C58 of the record, the record that is appellate court number 2-18-0471. Defendant stated in a 2016 filing that he missed a May 27, 2016 hearing because of a dead battery in his 2002 Saturn SL1 vehicle. Then, in his motion to vacate the July 2017 judgment that he's now appealing, defendant averred to the court that he missed that trial date, quote, because his 2002 Saturn SL1 needed a jump start because of an old car battery that went bad. And that is at page C178 of appellate court record number 2-17-0898. Therefore, either defendant was on notice in 2017 that his car battery had been dead for a year and he didn't replace it, but yet he relied on that car for transportation to court on the day his case was set for trial for a third time, or more likely, defendant was not being truthful as to one or both of those averments. Defendant clearly is able to make it to court after the fact and is fully prepared to request that the judgments against him be vacated. He just can't make it to court on judgment day. Judge Hallick was well within his discretion to waive defendant's stated excuses for failing to appear in court on the day of trial and decide that defendant acted affirmatively to evade the trial court's judgment. The trial court was fully within reason to put an end to defendant's pattern of curiously timed instances and not allow him to further squander the court's resources. The people, just as defendant, have the right to a fair and timely resolution to proceedings, which defendant has violated with his numerous delays and absences and his third request for vacating this judgment. And as to my third and final point, this court should affirm the trial court's ruling. The people ask this court to take judicial notice that as a serial pro se litigant, defendant has further matters pending before this court and undoubtedly also in various trial courts. The people fully recognize that defendant has a right to avail himself of the court system and to act as his own counsel. However, as this court has noted this morning, he remains subject to the same rules as those applied to attorneys. This court should not allow defendant to tax the limited resources of the court system, including court clerks, potential jurors, trial judges and prosecutors, with his repeated and again curiously timed absences, which allowed him to affirmatively evade judgment and it preempted the setting of other cases on the trial court's docket. Mr. Villanueva, whose vehicle was struck by defendant's vehicle in the underlying car accident, has also been greatly inconvenienced by defendant's acts of prolonging what should have been a routine traffic matter that should have been resolved years ago. And Mr. Villanueva should not be made to appear in court for trial a fourth time in this case. Your Honor, that concludes my argument. Please allow me to answer any questions. Justice Hutchinson, your question. Thank you, Justice Burkett. Counsel, Rule 556 talks about cash bail and it seems to be important to the purpose of the rule. We don't have cash bail posted here, do we? Is she there? I'm sorry. Can you hear me now, Your Honor? I can now, yes. Yes, I did hear your question. Your question was asking about cash bail. Right. Cash bail wasn't posted here, correct? To my knowledge, it was not. All right. Now, one of the issues then is what kind of a fine could be imposed if there was a judgment either by trial or, as Mr. Zemeder says, this default judgment. Does 556 actually prevent a court from entering a judgment or does it prevent a court from entering a judgment and imposing a fine? I'm not quite sure I understand your question, Your Honor. To my reading, 556 allows the court to enter an ex parte judgment of conviction assessing fines, penalties, assessments, and costs. Correct. But that's if a cash bail has been posted. So what is to prevent a trial court from simply entering a judgment of conviction, no fines or costs? I'm not sure I know the answer to that question, Your Honor. Okay. Did the state ever seek a warrant in this case throughout its life of three plus years to get Mr. Zemeder's presence in court for matters that were set for trial or otherwise? Not to my knowledge in the lengthy record, Your Honor. The people would argue that anyone, any litigant can have a bad day or an absence that needs to be excused. And the trial court could certainly exercise its discretion. You know, one time missing a court date is certainly understandable. Things happen. Two times is a coincidence. And at three times, I think it becomes a deliberate pattern of behavior. But no, I don't believe that the, I don't believe that a warrant was ever issued, Your Honor. All right. I have no other questions. Thank you, Justice Burkett. Thank you, Justice Hutchinson. Justice Shostak, your questions. How many times was he advised in absentia? I believe my brief notes, twice. So I would say at least twice he was notified that a trial could be conducted in absentia. At least twice, Your Honor. And the appellant indicates that this fact here would be different had a trial been held versus judgment entered. How do you respond to that? Well, I think by the, I don't know that the trial court was required to hold a trial at this point. I think that, you know, the vehicle code and Supreme Court rule allows a judgment to be entered at the initial court date. If the defendant does not appear, an ex parte judgment can be entered against him. So, you know, defendant asked for a bench trial, then he asked for a jury trial. Then when he did not show up on the date of his jury trial, I don't believe the defendant, I don't believe the court was required to present any evidence. I think given the record in this case, I believe that the court was well within its discretion to enter the judgment against defendant. Thank you. I have no further questions. Just briefly, actually the charge was amended to improper lane usage, correct? Yes, Your Honor. And the judgment of conviction was for improper lane usage, not failure to reduce, correct? The judgment of conviction, the final judgment entered that defendant is now appealing, I believe was failure to reduce speed. So the improper lane usage was an additional count and added charge? The state amended its charges before trial, yes. All right, that's all I have. Mr. Zimatter, rebuttal, sir. Okay. Well, I would like to touch base on the number of judgments that were entered. I would like to point out they were entered over a course of a period of time. You know, let's say I had three judgments in three months. Obviously, that would be a major red flag. You know, from my memory, you know, the date for the first bench for all was in February of 16. I could be a little bit longer the court date, but I believe it was February of 16. I missed that court date because I was sick. And then in January of 17, I missed a status date. And I believe that was for motions and stuff. And I know during that time, a lot of people were sick. I wasn't the only one who was sick. So I'm thinking to have two different judgments, 11 months apart, that's not a red flag at all. Because obviously, if everything was settled in six months, I would only have one judgment against me instead of two. And obviously, the default judgment I'm appealing now is in July of 17. And like I pointed out in my filings down below, you know, I attended some court dates that were very difficult for me to attend. I attended a court date on August 31 of 16, I believe. And then I attended a court date one week later. And I remember the first time this case was set for jury trial in October of 17. I had a pretrial status date. And because they couldn't get to my case because of other cases that were on the docket, the judge actually continued my case until the next day. So the fact that I attended two court dates a week apart, and then I went to court one day, and then I went to court the next day without any notice, you know, it shows that I want to go to court, and I don't want to miss it. And not only in this case, but in other stuff I've been involved in in the past, I've been required to go to court on a week's notice. And obviously people who have nine to five jobs who are working during the day, they're in court, and then they get a notice that they have to be in court a week later. Obviously that could jeopardize the job. So obviously the fact that I attended court a week apart, and then I attended a court date a day later after I was given no notice that I had to be in court, it shows that yes, I want to go to court, and I want to get this taken care of. And the state and I think a couple of your honorable judges are trying to question my credibility. You know, I have documents that I presented to the judge. I had two doctor notes. One of them is in the record, and I presented documents to the judge regarding the July court date that yes, I did get a jump start. And yes, I did get my battery replaced. And obviously in my documents, I have to refresh my memory, but obviously my battery in my car was on the older side, and obviously it was older than I thought. Because from what I remember, I had no idea that the battery was actually like nine months older. Well, I don't want to lie, and I don't want to be dishonest, but from my memory, I thought that the car battery in my car was actually younger than what it was. I can't give an exact timeframe, but obviously I thought the car battery was like six months or nine months younger than it actually was. And I thought my car battery would have been good for like a few more months, and I would have to replace it. So obviously my car battery trouble was totally unexpected. You know, it's not like I knew my car battery was old and it was going to fail any day, and I just neglected to replace it. I thought my car battery at least had a few months left. And when it comes to the question of whether fines were authorized or not, we're assuming for the sake of... Was that the beeper? Was that the alarm? Yes, Judge. Your time is up, Mr. DeMetta. Okay. Any questions, Justice Hutchinson, on the rebuttal? Yes, thank you. Mr. Smader, when your case was continued to the next day because of the too many cases on the call or the court was too busy and finally got to yours, and the day you had to come back a week later, was your job jeopardized by those continuances? Well, to be honest, I was unemployed at the time, so no job was jeopardized. And you said you received no notice that you had to be in court the next day. Didn't the judge or someone related to the court give you an order indicating you had to appear the next day for the case? Well, like I said, I had a pretrial conference for the joint trial that was set in October. I was given notice that I had to be in court the next day, like 22 hours before the actual court date. Because I believe I was given that order that I had to be in court at like 1 p.m. the next day or something. I don't remember, but I was given notice. But isn't that a notice? That's the issue. You had notice. You said in your statement you did not have notice that you had to be there the next day, but in fact, you had notice. Isn't that correct? Well, I guess what I'm trying to say is I didn't have notice until like 12 hours before. Well, I got notice at the last minute. I guess that's what I'm trying to say here. I don't remember if the next court date was at 9 a.m. or if it was at 1 p.m., but I got a court order. I'm not concerned, sir, about the time frame. You're saying you received no notice. In fact, you received an order from the court saying you had to be there the next day. Isn't that notice? Well, I guess my words were wrong. I should have been more careful in what I said. Yes, I was given notice the day before that I had to be in court the next day. And I didn't attend court the next day. And it seems that you were pretty careful about attending court on days when you had matters pending that you wanted resolved, correct? Well, I try to be careful attending court on all court dates, not just court dates that are important for me, but all court dates I want to be there. But you were never sick on a court date where you had something pending and you were never sick on a date when you were there and your car didn't break down on your motion days. Is that correct? You would have to look at the record. I'm not going to answer that question because I could lie or I could be mistaken about the facts. I don't recall. You have to look at the record. And that's my honest question. Thank you, sir. Mr. or Justice Burkett, I have no other questions. Justice Shostak, any other questions? None, thank you. I have no questions on that, Mr. Zemeder. The court will take the case under advisement. A written decision will be issued in due course. The court stands in recess for the next case. Thank you. Thank you both for the quality of your arguments today. Thank you. All right. Have a good one and stay safe and thanks a lot. You're welcome.